IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNINCORPORATED NON-PROFIT ASSOCIATION OF CONCERNED EASTSIDE CITIZENS AND PROPERTY OWNERS, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | 5:09-CV-905-RP |
| CITY OF SAN ANTONIO, | § § | |
| Defendant. | § § | |

## ORDER AND OPINION

Before the Court are the Magistrate Judge's Memorandum and Recommendation in the above-styled case and the Advisory to the Court subsequently filed by Intervenor Crosspoint. Specifically, the Court now considers the Memorandum and Recommendation of United States Magistrate Judge John W. Primomo filed June 10, 2011 (Dkt. #56); Defendant City of San Antonio's Objections to the Memorandum and Recommendation filed July 11, 2011 (Dkt. #67); Plaintiff Unincorporated Non-Profit Association of Concerned Citizens and Property Owners' Response to Defendant's Objection filed September 20, 2011 (Dkt. #86); Intervenor Crosspoint's Objections to the Memorandum and Recommendation filed April 2, 2012 (Dkt. #112); Intervenor's Advisory Regarding Case Status filed March 26, 2013 (Dkt. #132) (the "Advisory"); Plaintiff's Response to Intervenor's Advisory filed February 13, 2015 (Dkt. #144); Defendant's Reply to Plaintiff's Response filed February 27, 2015 (Dkt. #146); Intervenor's Reply to Plaintiff's Response filed February 27, 2015 (Dkt. #147); and Plaintiff's Sur-Reply to Intervenor's Reply filed March 2, 2015 (Dkt. #148).

In light of both Defendant and Intervenor's objections to Judge Primomo's Memorandum and Recommendation, this Court has undertaken a *de novo* review of the claims discussed in

the objections.[1]  After reviewing the parties' filings, applicable case law, and the entire record, it is this Court's opinion that Judge Primomo's Memorandum and Recommendation should be adopted in part and rejected in part.

## BACKGROUND

This case arises from a City of San Antonio ("City") zoning ordinance passed in 2009, Ordinance 2009-09-17-0758 ("2009 Ordinance").  The 2009 Ordinance affected the zoning of real property known as 301 Yucca Street, San Antonio, Texas 78220 (the "Property")—specifically altering the zoning of a roughly four acre portion of the Property (the "TH Property"). (Pl.'s Mot. Summ. J., Ex. 1).  The Property was owned by Sisters/Servants of the Holy Ghost and Mary Immaculate ("Sisters"), and the Sisters used a large structure on the TH Property as a church and convent.  (Pl.'s Mot. Summ. J., at 6).  Since 2001 the Property has had a base zoning designation of "MF-33", a multi-family residential zoning designation.  *Id.*

Sometime before 2009, the Sisters entered into a multi-party transaction with Ridgemont Investment Group, LLC ("Ridgemont") and Crosspoint, Inc. ("Crosspoint") involving the conveyance of the Property.  *Id.* at 12.  Crosspoint operates correctional and rehabilitative facilities, and intended to use the TH Property as short-term housing for parolees as they transition from prison to release.  *Id.* at 13.  These facilities are colloquially known as "halfway homes" or "transitional homes."  In order to operate a transitional home, however, a special use permit is required and the base zoning designation would need to change from MF-33 to C-3—a commercial zoning designation.  (Def.'s Mot. Summ. J., at 2; Am. Compl., at 6).  In June 2009 the Sisters filed a request to have the TH Property rezoned to C-3.  (Pl.'s Mot. Summ. J., at 13).

Initially, the City Zoning Staff ("Staff") recommended that the request should be denied. *Id.* at 14.  The Staff found that the C-3 zoning designation was too "intense" for this part of town, as it was surrounded mostly by residences and located within 1000 feet of a public park or

---

[1]     Plaintiff did not file objections to any adverse findings in Judge Primomo's Memorandum and Recommendations, and accordingly, the Court only reviews these findings for plain error.

school.  (Pl.'s Mot. Summ. J., Ex. 13, at 13-16).  To address these concerns, Ridgemont and the Sisters entered into a restrictive covenant, agreeing that the TH Property could not be used for various commercial purposes and that no persons convicted of sex-oriented crimes or murder could be housed in the planned transitional home.  (Def.'s Resp., Ex. C-1, at 13-21).  Although the Staff continued to recommend that the rezoning application should be denied, *id.*, at 29-30, the City Zoning Commission ultimately recommended approval so long as the planned transitional facility was limited to 100 beds.  (Def. Mot. Summ. J., at 2).

The City Council addressed the Sisters' rezoning request on several occasions.  (Pl.'s Mot. Summ. J., Ex. 18).  On the day of the vote, the City Council heard over four hours of testimony from individuals speaking both for and against rezoning.  (Pl.'s Mot. Summ. J., Ex. 18-b).  The City Councilmember representing the district where the TH Property is located voiced objections to putting the transitional home in her district, while still recognizing the need for such reentry facilities in San Antonio.  *Id.* at 3:49:20-4:01:30.  Another City councilmember noted that the restrictive covenants placed on the TH Property made it more akin to property zoned C-1—a much less intense zoning designation—than C-3.  *Id.* at 4:07:00-4:08:11.  The Staff confirmed this, and further stated they have likely recommended approval if the request had been to rezone the TH Property as C-1.  *Id.*  Ultimately, the City Council passed the 2009 Ordinance by a vote of 9-2, rezoning the TH Property from MF-33 to C-3 and granting the TH Property a Specific Use Authorization to operate a transitional home.  (Am. Compl., at 7; Def. Mot. Summ. J., at 2).

Since the 2009 Ordinance took effect and Crosspoint began operations, property values in the vicinity of the TH Property have decreased 25-35%.  (Pl.'s Mot. Summ. J., at 17).  To address concerns about the falling property values, homeowners in the area organized the Unincorporated Non-Profit Association of Concerned Eastside Citizens and Property Owners ("the Citizens Association").  The Citizens Association filed suit against the City on January 10, 2010,  claiming the 2009 Ordinance constituted impermissible spot zoning, deprived the

3

organization's members of procedural and substantive due process, violated of the equal protection clause, and amounted to unconstitutional takings. (Am. Compl., at 10-15).

Shortly thereafter, the City further amended the City Code through Ordinance 2011-11-18-0985 (the "2011 Ordinance"), which became effective on January 1, 2011. (Advisory, at 5). The 2011 Ordinance allows transitional homes to operate on property with a base zoning designation of MF-33—the same designation that the TH Property had prior to the 2009 Ordinance—so long as the City grants the property a Specific Use Authorization. *Id.*

After nearly a year of discovery, the City filed a motion for summary judgment, (Dkt. #33) and the Citizens Association filed its own motion for summary judgment six months later. (Dkt. #55). These motions were referred to United States Magistrate Judge John W. Primomo, and on June 10, 2011, Judge Primomo entered his Memorandum and Recommendation. (Dkt. #56). Judge Primomo found that the City's actions constituted impermissible spot zoning, and awarded summary judgment to Plaintiff on that claim. (Mem. & Recommendation, at 27). Judge Primomo also found that the City was entitled to summary judgment on Plaintiff's equal protection, procedural due process, and unconstitutional takings claims, but that the City's motion should be denied regarding Plaintiff's spot zoning, substantive due process, and declaratory judgment claims. *Id.* at 13-30.

A month later, Crosspoint moved to intervene as a party defendant. (Dkt. #69). United States District Judge Orlando Garcia granted Crosspoint's motion, (Dkt. #110), and allowed Crosspoint an opportunity "to conduct discovery, supplement the record, and provide a meaningful response to the pending dispositive motions." (Dkt. #116, at 1-2). After months of additional discovery, Crosspoint filed an Advisory, where it presented its own arguments pertaining to the parties' motions for summary judgment, and for the first time raised the issue of whether the 2011 Ordinance mooted the Citizens Association's claims. (Advisory, at 1-4).

On January 20, 2015, this case was transferred by Judge Garcia to this Court.  (Dkt. #138).  As the record has now been fully supplemented, the Court now addresses Judge Primomo's Memorandum and Recommendation and the parties' dispositive motions.

### DISCUSSION

Plaintiff brings claims for spot zoning, deprivation of procedural and substantive due process, violation of the equal protection clause, unconstitutional takings, and a declaratory judgment.  (Am. Compl., at 10-15).  Each of these claims was discussed by Judge Primomo in his Memorandum and Recommendation, and his recommendations on three of the claims—spot zoning, substantive due process, and declaratory judgment—were objected to by the City and Crosspoint.  Each of Plaintiff's claims is addressed below.

**A.  Spot Zoning**

In his Memorandum and Recommendation, Judge Primomo found that the Citizens Association had standing to bring its claims against the City.  (Mem. & Recommendation, at 13).  But even when a plaintiff has standing at the outset, "[t]here must be a case or controversy through all stages of a case[.]"  *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013).  This means that "throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'"  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)).  Generally, anything that eliminates the actual controversy after the lawsuit is commenced will render the action moot.  *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

Defendant and Intervenor now argue that Plaintiff's claims have been mooted by the 2011 Ordinance that allows transitional homes to be operated on property with a base zoning designation of MF-33.  (Advisory, at 4; City's Reply to Advisory, at 1).  Crosspoint contends that even if this Court voids the 2009 Ordinance as spot zoning, the TH Property will merely revert back to a MF-33 zoning designation—a designation that now allows transitional homes to be

operated when there is a Specific Use Authorization.  (Advisory, at 5-6).  Thus, Crosspoint

argues, the Citizens Association's spot zoning claim is moot because its alleged injury is not

likely to be redressed by a favorable judicial decision.  *Id.* at 8-9.  The Citizens Association, on

the other hand, argues that its claims are still live because if the 2009 Ordinance is deemed

unconstitutional, then Crosspoint will be forced to shut down the transitional home on the TH

Property until it obtains a Specific Use Authorization.  (Resp. to Advisory, at 4).

The resolution of this issue turns on the language of the challenged ordinance.  The

2009 Ordinance provides:

> Chapter 35, Unified Development Code, Section 35-304, Official
> Zoning Map, of the City Code of San Antonio, Texas is amended
> by changing the zoning district boundary of 4.914 acres of Block
> 16, NCB 1546 and Block 20, NCB 1551 from "MF-33" Multi-Family
> District to "C-3 NAS" General Commercial District with a Specific
> Use Authorization for a Correctional Facility (Transitional Home).

(Pl.'s Mot. Summ. J., Ex. 1).  This ordinance both changes the TH Property's zoning designation

and gives the TH Property a Specific Use Authorization to operate a transitional home.

Ultimately, whether Plaintiff's spot zoning claim is moot depends on the severability of

the 2009 Ordinance.  If the portion of the ordinance that changes the zoning designation is

severable from the portion that grants the Specific Use Authorization, then Plaintiff's spot zoning

claim is moot because a favorable ruling would not prevent Crosspoint from operating the

transitional home.  If the ordinance is not severable, however, then Plaintiff has a live claim

because Crosspoint would be forced to shut down the transitional home until it could secure a

new Specific Use Authorization.

Severability doctrine governs whether a court should sever a partially unconstitutional

statute.  "The goal of severability is to retain the valid portions and applications of a statute

whenever possible."  *Geeslin v. State Farm Lloyds*, 255 S.W.3d 786, 797 (Tex. App.—Austin

2008, no pet.) (citing *Western Union Tel. Co. v. State*, 62 Tex. 630, 638 (1884)).  This doctrine

reflects the principle in Texas law that "in the construction of statues, if it can be lawfully done, it

is the duty of the court to construe a statute so as to render it valid." *Id.* (quoting *Sharber v. Florence*, 115 S.W.2d 604, 606 (Tex. 1938)).   To determine whether a statute can be permissively severed, courts primarily look to legislative intent.  *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999) ("The inquiry into whether a statute is severable is essentially an inquiry into legislative intent.").

Here, the San Antonio City Code provides a directive to sever ordinances when possible:

> The sections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase clause, sentence, paragraph or section of this Code shall be declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code.

City Code § 1.17.  This directive is a clear statement of the City Council's legislative intent, and as such it guides this Court's inquiry.  *Geeslin*, 255 S.W.3d, at 798 ("As severability is an inquiry into legislative intent, . . . we are guided by the legislature's explicit inclusion of [a] severability provision.").

Judge Primomo found that the City engaged in impermissible spot zoning by rezoning the TH Property from MF-33 to C-3, and accordingly recommended that this Court void that portion of the 2009 Ordinance.  (Mem. & Recommendation, at 27).  The sentence in the 2009 Ordinance changing the zoning, however, ends with the prepositional phrase "with a Specific Use Authorization for a Correctional Facility (Transitional Home)."  (Pl.'s Mot. Summ. J., Ex. 1). Following the City Council's intent that individual "clauses and phrases" in the City Code should be severed when possible, the Court finds that even if it voided the rezoning portion of the 2009 Ordinance, the phrase containing the Specific Use Authorization would survive.  This conclusion is both consistent with the City Council's legislative intent and furthers the ultimate goal of the severability doctrine: "retain[ing] the valid provisions and applications" of an ordinance whenever possible.  *Geeslin*, 255 S.W.3d, at 797.

Thus, even if the Court were to void the rezoning portion of the 2009 Ordinance, the TH Property would revert to a zoning designation of MF-33 but keep the Specific Use Authorization to operate the transitional home.  And under the 2011 Ordinance, Crosspoint can continue to operate a transitional home under these circumstances.  Therefore Plaintiff's spot zoning claim is moot—Plaintiff's alleged injury is no longer "likely to be redressed by a favorable judicial decision."  *Spencer*, 523 U.S. 1, 7 (1998).  The Court accordingly rejects Judge Primomo's recommendation regarding Plaintiff's spot zoning claim, and denies Plaintiff's claim as moot.

**B.**     **Substantive Due Process**

Judge Primomo found that the City should not be granted summary judgment on Plaintiff's substantive due process claim.  (Mem. & Recommendation, at 28).  In determining this, Judge Primomo found that the City "did not provide a basis for summary judgment" on the issue.  *Id.*  He also found that the standard used to determine deprivation of due process is substantially similar to that used for spot zoning, so the City's motion should be denied for the reasons articulated in his discussion on that issue.  *Id.*  The City and Crosspoint objected to this recommendation.  In short, both parties argue (1) that Plaintiff's substantive due process claims are mooted by the 2011 Ordinance, (Advisory, at 4; City's Reply to Advisory, at 1); and (2) that Judge Primomo failed to correctly apply rational basis scrutiny to the City's zoning decision, (City's Objections, at 30; Crosspoint's Objections, at 5).

For the reasons stated above, Plaintiff's substantive due process claim—at least insofar as it pertains to equitable relief—is moot because the 2011 Ordinance allows transitional homes to operate in areas with a zoning designation of MF-33 if a Specific Use Authorization is granted.  Even so, Plaintiff may still have a live claim for damages that were incurred before the 2011 Ordinance took effect.  *See JSLG, Inc. v. City of Waco*, 504 Fed. App'x 312, 319 (5th Cir. 2012) ("Thus, although [the corporation's] claim for equitable relief is now moot, we must address its claims for damages.").

8

Government action comports with substantive due process under the Fourteenth Amendment if the action is rationally related to a legitimate government interest. *FM Prop. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996). "Only if such government action is 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare,' may it be declared unconstitutional." *Id.* (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)). In determining whether an ordinance violates substantive due process, the court only asks "whether there was a conceivable factual basis for the specific decision made." *Bush v. City of Gulfport*, 454 Fed. App'x 270, 276 (5th Cir. 2011). The party asserting a substantive due process violation bears the burden of persuading the court that the legislative body acted in the absence of a legitimate government interest. *St. Joseph Abbey v. Castille*, 700 F.3d 154, 162 (5th Cir. 2012) (holding that under rational basis review, there is no evidentiary burden on the state; rather a challenger must allege facts that negate justifications for the challenged law).

Plaintiff has failed to meet its burden to show that there was no "conceivable factual basis" for the City Council's zoning decision. *Id.* Indeed, included in Plaintiff's own summary judgment evidence is a video of the City Council's thorough consideration of the proposed 2009 Ordinance. (Pl.'s Mot. Summ. J., Ex. 18). Over the course of the four-hour debate, numerous "legitimate government interests" are articulated—most importantly, the need to have facilities that help the incarcerated transition back into society. (Pl.'s Mot. Summ. J., Ex. 18-b, at 3:53:57). And changing the zoning designation from MF-33 to C-3 is rationally related to these interests for a very simple reason: under then-existing law, changing the zoning designation was *the only way* to allow a transitional home to operate on the TH Property. *Id.* at 4:04:02 ("Yes sir, the least intense zoning district that can be requested for this type of facility is C-3-S, C-3 being the base district."). At this meeting, members of the City Council noted that confining transitional homes to C-3 zoning districts or higher seemed too restrictive, *id.* at 4:04:43, explaining why the council loosened these restrictions in the 2011 Ordinance. Councilmembers

9

further noted that the restrictions in the TH Property's deed of sale limited the use of the TH Property to something more akin to C-1 base zoning than C-3, and that the Staff would have likely recommended approval had the request only sought to change the zoning designation to C-1.   *Id.* at 4:07:00-4:08:11.   So at the very least, the City Council's zoning decision was rationally related to the legitimate interest it has in promoting healthy rehabilitation and transition into society.   Thus, to the extent that Plaintiff's substantive due process claims for damages are still live, Defendant is entitled to summary judgment because Plaintiff failed to show that the City Council acted in the absence of a legitimate government interest.

**C.      Procedural Due Process, Equal Protection, and Unconstitutional Takings**

Judge Primomo also made recommendations on Plaintiff's procedural due process, equal protection, and unconstitutional takings claims.   (Mem. & Recommendation, at 27-30). On each issue he recommended that the City's motion for summary judgment be granted.   *Id.* Plaintiff did not file objections to Judge Primomo's recommendation, so the Court only reviews these claims for plain error.   *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).   Even if the Court's standard of review was *de novo*, however, Defendant's Motion for Summary Judgment would be granted either because the claim has been mooted by the 2011 Ordinance or, if there is still a live claim, for substantially the same reasons articulated by Judge Primomo in his Memorandum and Recommendation.

**D.      Declaratory Judgment**

Likewise, Defendant is entitled to summary judgment on Plaintiff's claims for declaratory judgment regarding procedural due process, substantive due process, equal protection, and spot zoning for the reasons stated above and those articulated in Judge Primomo's Memorandum and Recommendation.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant City of San Antonio's Objections to the Memorandum and Recommendation of the United States Magistrate Judge (Dkt. #67) are **SUSTAINED IN PART** and **OVERRULED IN PART**.

**IT IS FURTHER ORDERED** that Intervenor Crosspoint, Inc.'s Objections to the Memorandum and Recommendation of the United States Magistrate Judge (Dkt. #112) are **SUSTAINED IN PART** and **OVERRULED IN PART**.

**IT IS FURTHER ORDERED** that the Memorandum and Recommendation of the United States Magistrate Judge (Dkt. #56) is hereby **APPROVED** and **ACCEPTED** by this Court regarding Plaintiff's claims on Procedural Due Process, Equal Protection, and Unconstitutional Takings. The Memorandum and Recommendation is **REJECTED** regarding Plaintiff's Claims for Spot Zoning, Substantive Due Process, and Declaratory Judgment.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. #55) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant City of San Antonio's Motion for Summary Judgment (Dkt. #33) is **GRANTED**.

**IT IS FINALLY ORDERED** that the Court **DENIES** as moot all pending motions in this cause.

**SIGNED** on April 21, 2015.

_____
ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE